Kimminau Law Firm, PC
109 East Mabel Street
Tucson, AZ  85705
(520) 887-7816
State Bar No. 012229

Chris J. Kimminau, Esq.
Attorney for Dino Sisneros

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case Nos.: CR 12-0174-TUC-CKJ (LAB) |
| ) | |
| Plaintiff, ) | |
| vs. ) | **MOTION *IN LIMINE* RE:** |
| ) | **"INEXTRICABLEY INTERTWINED"** |
| ) | **EVIDENCE** |
| DINO SISNEROS, ) | |
| ) | Assigned to Hon. Cindy Jorgenson |
| Defendant. ) | |

      Comes now Defendant, DINO SISNEROS, by and through his attorney, undersigned, and pursuant to Rules 104(a), 403, 404(b)(1) and 611(a)(1) of the Federal Rules of Evidence, hereby moves *in limine* for the preclusion of certain evidence and for an order limiting the witnesses and the Government's characterization of certain evidence at trial. This motion is supported by the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

      *Applicable Law:*

      Rule 104(a) of the Rules of Evidence provides, "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."

      Rule 403 of the Rules provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

1

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 404(b)(1) specifies, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Similarly, Rule 611(a)(1) provides, "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth." Propensity evidence is generally inadmissible.

### *The Court's Original Order:*

From **Document 37**, the Court's original order on this topic states, in relevant part:

> Evidence, for example, that Sisneros used funds from the investment fraud scheme in the mortgage fraud scheme without paying proceeds back to the investment fraud investors is highly relevant to the current charges. The Court finds the prejudicial value is not substantially outweighed by the danger of unfair prejudice.
> However, relevant evidence may also be excluded if its probative value is outweighed by the danger of "confusing the issues, misleading the jury, undue delay, or wasting time." Fed.R.Evid. 403. The Court finds that it may be appropriate to limit the inextricably intertwined evidence at trial. This matter will be discussed with counsel at a status conference prior to trial.

At last week's status conference, the Court indicated it may have time to hear from the parties on this topic prior to the start of trial on June 6, 2013. For the Court's consideration, Defendant presents the following facts and argument

### *Argument for the Preclusion of Certain Witnesses and Evidence:*

General notions on the inadmissibility of criminal propensity evidence are discussed in Old Chief v. United States, 519 U.S. 172, 180 (1997), which instructs:

> The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged... So, the Committee Notes to Rule 403 explain, '"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not

2

necessarily, an emotional one.' Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U. S. C. App., p. 860.

The Supreme Court further observed, "Such improper grounds certainly include the one that Old Chief points to here: generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." Old Chief at 180-181. Therefore, as a general precept, evidence of propensity to engage in criminal activity or manifesting a belief a defendant has done so, is inadmissible:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

Old Chief at 181 (quoting Michelson v. United States, 335 U.S. 469, 475-76 (1948)).

In this case, the danger of offering and arguing impermissible propensity evidence is particularly acute since the government's charges in the first case have yet to be tried.  Frankly, it would be outrageous to conduct a mini-trial on the facts of **that case**—or, even more critically— intimate a conclusion about those unproven facts, while trying the correspondingly as yet unproven facts of **this case**.

Though Defendant does not object to the use of relevant objective **facts** from the first case, particularly, **tracing the use of monies** provided by the alleged victims in this case, it would be highly prejudicial for the Court to permit the government or any of its witnesses to suggest any of the facts of the first case **amount to a crime or a scheme to defraud**.  The facts, if relevant, can speak for themselves.  A **subjective spin** or a **legal impression** of what those facts **show** cannot be permitted either in opening statements or closing arguments by the government, or during questioning of witnesses.  Thus, the Court should preclude Government

3

argument or witness testimony which characterizes a certain set of facts not charged in this case as "fraudulent" or "illegal" or as part of another "scheme" not charged in this case.

     Moreover, the use of conclusory labels or shorthand for objective facts or categories of facts is inappropriate and must be avoided. For example, the shorthand this Court used in its 8-20-12 order must not be repeated at trial. In granting the Government's use of so-called inextricably intertwined evidence the Court, stated, "Evidence, for example, that Sisneros used funds from the investment fraud scheme in the mortgage fraud scheme without paying proceeds back to the investment fraud investors is highly relevant to the current charges." **Document 37**. Obviously, it is for the jury to determine whether there was an "investment fraud scheme" in this case just as it is for a future jury to determine whether there was a "mortgage fraud scheme" in the first case. Similarly, though the term "investors" may not be inappropriate, the term "investment fraud investors" is certainly inappropriate. Imbuing this case with such terms and labels through government argument, government questioning or witness answers are highly prejudicial and invade the province of the jury to determine the ultimate facts.

     In fact, Defendant contends that much of what the government may need to show insofar as "where the money went," or "how the money was used" may be proved by documentary evidence. Defendant is willing to stipulate to much of this evidence provided the government agrees Defendant may "fill in the gaps," so to speak, in some of Investigator Flick's summaries by introducing other portions of the bank records from the same accounts.

     In this vein, what monies went into and out of an account, and where it went, may be relevant. But, for example, statements on Defendant's loan application from the other case is irrelevant and prejudicial and would also very likely confuse the jury and waste time. Sisneros' mortgage application documents must therefore be precluded.

     Further, a specific example of alleged misconduct which is indisputably collateral to this case but which the Government nonetheless intends to offer may illustrate the danger. Andrea Villalba is Defendant's niece. The Government wants to have her testify the signatures appearing on certain residential property leases purporting to be hers are not, but were placed

there by Melissa Sisneros. The leases were never relied upon by any underwriter in making a refinancing decision benefitting the Sisneros.

In any event, the leases have no connection whatsoever to any of the loans in this case or any of the three wire transfers. They would be offered only to show a deceptive act on the part of Defendant's wife. Proof of a wholly unrelated act of deception by Melissa Sisneros, in which Defendant may or may not have been complicit, is totally collateral to the facts at issue in this case. Ms. Villaba's testimony and the leases must be precluded.

On the other hand, if the Court admits the Andrea Villalba "lease" evidence, Defendant will have to call Michael Quiroz, co-defendant from the first case, to explain how it was, in fact, the loan underwriter's own suggestion to produce a dummy lease so that the refinincing applied for by Mr. Sisneros (which, again, is not money having to do with the loans in this case) would be approved. Quiroz would further testify how the leases with Andrea Villalba's signature were never actually received as part of the loan application. Since Quiroz is a co-defendant, and possibly subject to impeachment by the Government, Defendant will next have to call Pasquale ("Pat") Montesanti, who also has direct knowledge of the leases with Ms. Villalba's signatures and knows they **were never used** to procure anything.

From there, it just gets more attenuated because the Government may wish to use Montesanti to show Defendant borrowed money from another of the Government's collateral witnesses, David Stone, who has not been fully re-paid. Stone is not a victim in this case. Montesanti and Stone were neighbors. Montesanti introduced Stone to Dino Sisneros. Stone loaned Sisneros money on two occasions. The first loan was paid back as promised with interest. The second was not repaid in full. However, Sisneros contends Montesanti contacted him because Stone was pressuring Montesanti about Sisneros paying Montesanti back. Evidence will show Montesanti told Sisneeros to "just pay me the money you owe Stone and I will get it to him." In other words, Montesanti told Sisneros he was Stone's agent. Sisneros then paid Montesanti approximately $40,000 which Stone claims he never received and which Montesanti now claims he never received. Montesanti told Kylie Flick monies received by him from Sisneros were payments on loans Sisneros was **providing to him** because "times were tough" for

5

Montesanti. Obviously, all of this money--what was a loan, what was a repayment, what was intended to go to Stone, what was intended to be from Sisneros to Montisanti--becomes completely attenuated from the allegations in this case. All of this type of evidence should be precluded because it will waste time, tend to confuse the jury, and will be unduly prejudicial to the Defendant, who should not have to defend in this case, either, a) allegations of misconduct from the other case, or, b) uncharged allegations from neither this case nor the other case unless the facts supporting those allegations truly are inextricably intertwined with the transactions at issue in this case.

What must be avoided is the reversible error occurring in the wire fraud case of United States v. Brown, 327 F.3d 867 (9th Cir. 2003). It must be remembered, definitionally, evidence is only "relevant" if, "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E., Rule 401. As the comment to Rule 401 establishes:

> Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence… The variety of relevancy problems is coextensive with the ingenuity of counsel in using circumstantial evidence as a means of proof.

This Court must not allow the Government's ingenuity to become subterfuge for improperly motivated, inadmissible, character evidence.

**Brown** involved an Alaskan wood chipping company selling wood chips to a Japanese paper manufacturer. It was alleged there was a 2% underestimate of the wood chips' moisture content which were sold to the paper company. Id., 868. Brown was indicted for 28 counts of wire fraud (based on 28 facsimiles sent from Alaska to Washington) and 25 counts of money laundering. Id., 869. All the money laundering counts were dismissed before trial. Id. The trial court permitted introduction of other acts evidence under a Rule 404(b) "knowledge and intent" theory and because the conduct was "'sufficiently intertwined' with the evidence of crimes charged in the indictment that to prevent the jury from hearing it would give the jury a distorted picture of the events in question." Id., 871. The "other acts" involved Brown's deceptive

6

practices of underestimating the moisture content of incoming chips purchased from independent lumberjacks and "cooking" incoming chips from the independent truckers/lumberjacks for 16 hours while "cooking" its outgoing chips from it own sources for just 12 hours, resulting in his company "selling just a little bit of moisture." Id., 869.

In closing argument the prosecutor argued, "If a man is willing to cheat a little bit over here, wouldn't he be willing to cheat a little bit over here?" Id., 871.  Obviously, for Defendant to have a fair trial in this case, the Government cannot be permitted to draw the same type of impermissible inference for the jury in this case, involving personal loans, by using facts from the first, as yet untried case, involving alleged mortgage refinancing fraud.

This Court has already recognized evidence is only "inextricably intertwined" if it "constitutes a part of the transaction that serves as a basis for the criminal charge." **Document 37**, 2:2-4.  Much of the evidence the Government wishes to offer simply is not "inextricably intertwined" because it is not "part of the transaction that serves as the basis for the criminal charge[s]."

Thus, though Defendant cannot object to any legitimate effort by the Government to "trace the money," he must object to any effort to present "other bad acts" though Government witnesses testifying about failed repayments from other transactions or other possible unrelated acts of dishonesty.  For example, the Court should not permit this trial to descend into a contest over who can present more witnesses who have either been, or not been, repaid by Dino Sisneros.  Rhetorically, if the defense can show Mr. Sisneros has paid back 51% of all the loans he has ever procured, will he be entitled to a directed verdict?  Or if the Government can produce six witnesses testifying Sisneros has defaulted on loans they made to him whereas the defense can only present five witnesses who will testify Sisneros paid back their loans as agreed, will that make all 11 witnesses' prospective testimony relevant and admissible at trial?  Obviously, such a trial within a trial is one of the central dangers of permitting other act evidence masquerading as "inextricably intertwined" evidence when it is in fact impermissible character evidence.

Frankly, evidence from the following Government listed witnesses does not even remotely "constitute a part of the transaction that serves as the basis for the criminal charge" and

should therefore be precluded absent a sufficient government showing of relevance substantially outweighing the danger of unfair prejudice.  It is noteworthy that almost all of the transactions the Government wishes to use occurred **prior** to the loans at issue in the present case.  How can tracing the funds from the loans possibly lead to transactions which occurred prior to the receipt of the loan proceeds?  Defendant therefore requests a pretrial hearing on the admissibility of evidence offered by:

- Andrea Villalba
- David Stone
- Pat Montesanti
- Edward Chapman
- Wanchai Wongsen
- Thomas Cooke
- Dana Pulsifer
- Tom Thrasher, Sr.
- Ronald Bas
- Kathleen Corrow
- Judy Randels
- Douglas Wright
- Larry Yodelman

and the admissibility of the following Government Exhibits:

- The Andrea Villalba rental documents
- The Sisneros loan application
- Any document that relate to transactions prior to the dates covered in counts 1-3 of the indictment
- Photographs of various of Defendant's automobiles
- Installment payment records for Defendant's automobiles
- Purchase agreements for the cars (which predate the indictment)
- The video tape of the inside of Defendant's home taken at the execution of the search warrant

RESPECTFULLY submitted this 3rd day of June, 2013

/x/ Chris J. Kimminau

_____

Chris J. Kimminau, Attorney for Dino Sisneros

Copy of foregoing electronically filed and served

8